1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PLANS, Inc.,

       Plaintiff,

   v.

SACRAMENTO CITY UNIFIED
SCHOOL DISTRICT, et al.,

       Defendants.

NO. CIV. S-98-266 FCD/EFB

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    The Phase I trial of this case commenced on August 31, 2010.
That same day, following the close of plaintiff PLANS, Inc.'s
("plaintiff") case-in-chief, addressing the sole issue of whether
anthroposophy is a religion, defendant Sacramento City Unified
School District ("defendant" or "SCUSD") moved for a judgment on
partial findings pursuant to Federal Rules of Civil Procedure,
Rule 52(c) ("Rule 52(c)").  The court heard oral argument on the
motion and stated on the record, its tentative decision to grant
the motion; however, it permitted the parties leave to file
written briefing and set the matter for a further hearing on
September 22, 2010, should one be necessary.  The court has

1

reviewed the parties' briefing, and for the reasons stated on the record on August 31 as well as those set forth more fully below, the court GRANTS defendant's Rule 52(c) motion.[1]

## BACKGROUND

Plaintiff originally filed this action in 1998 against SCUSD and Twin Ridges Elementary School District ("Twin Ridges"), alleging their operation of Waldorf public schools violates the First Amendment of the United States Constitution, as well as the California State Constitution. Plaintiff alleges that the primary purpose and effect of Waldorf education is to advance religion, specifically the alleged religious doctrines of anthroposophy. Plaintiff seeks a declaratory judgment that the school districts' operation of taxpayer-funded Waldorf schools is illegal and seeks to enjoin the school districts from operating the schools.

Previously in September 2005, this court commenced a bifurcated trial in this case on the threshold issue of whether anthroposophy is a religion for purposes of the Establishment Clause. However, before permitting plaintiff to call its first witness, the court required plaintiff to make a proffer as to what evidence it had to make this showing. Finding the proffer wholly insufficient,[2] the court entered judgment in favor of

---

[1]   Because the court finds that further oral argument will not be of material assistance, it orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

[2]   Plaintiff conceded it had no witnesses in light of the court's previous exclusion, at the final pretrial conference, of plaintiff's proposed witnesses, Betty Staley ("Staley") and Crystal Olsen. The court excluded these witnesses from testifying based on plaintiff's failure to timely disclose them as expert witnesses. Plaintiff indicated it had only one piece

1  defendants pursuant to Rule 52(c).

2       On November 21, 2007, the Ninth Circuit reversed this

3  court's September 28, 2005 judgment in favor of defendants.  In a

4  brief, unpublished opinion, the Ninth Circuit held that this

5  court erred in excluding the testimony of the "witnesses in

6  question."[3]  The court held that "because [plaintiff] intended to

7  call the witnesses as percipient witnesses, it did not need to

8  comply with the court's deadline for expert witness disclosures."

9  The court also emphasized that plaintiff disclosed these

10 witnesses as early as January 2001, and there was no prejudice

11 since defendants had designated these witnesses as expert

12 witnesses.  (Docket #281.)

13      Following the Ninth Circuit's remand order, the court

14 granted in March 2008, Twin Ridges' motion to dismiss, leaving

15 SCUSD as the sole remaining defendant.  (Docket #295, dismissing

16 Twin Ridges since as of June 30, 2007, it ceased chartering any

17 Waldorf methods public schools.)  Plaintiff subsequently filed in

18 May 2009, a substitution of counsel, replacing Scott Kendall who

19 had litigated the case at the time of the 2005 trial, with Donald

20 Michael Bush.

21

22 _____

23 of evidence in support of its case (plaintiff's Exhibit 89, a
   book entitled The Waldorf Teacher's Survival Guide, written by
24 Eugene Schwartz), but acknowledged that it had no witness to
   authenticate or otherwise testify to the contents of the book
25 (plaintiff had previously, voluntarily withdrew Schwartz as a
   witness in the case).  The court found the Exhibit excludable for
26 a failure to authenticate or lay a proper foundation and/or as
   hearsay.  (Docket #248.)

27      [3]  The Ninth Circuit opinion did not name the witnesses at
   issue, but the parties agree Staley was one of the subject
28 witnesses.

                              3

Thereafter, following a status conference in December 2009, the court held a further final pretrial conference in June 2010, setting the matter again for trial of Phase I of the case.[4] (Docket #318.)  As set forth in the court's Final Pretrial Conference Order, Phase I would address the sole issue of whether anthroposophy is a religion for Establishment Clause purposes.

On that issue, plaintiff bears the evidentiary burden of proof.  Alvarado v. City of San Jose, 94 F.3d 1223, 1226-31 (9th Cir. 1996).  As set forth in the Final Pretrial Conference Order, relevant to the court's determination of whether plaintiff has met its burden, are the following Alvarado factors:

(1)   Whether anthroposophy is a system of belief and worship of a superhuman controlling power involving a code of ethics and philosophy requiring obedience thereto;

(2)   Whether anthroposophy addresses fundamental and ultimate questions having to do with "deep and imponderable matters."

(3)   Whether anthroposophy is "comprehensive in nature."

(4)   Whether anthroposophy can be recognized by formal and external signs such as formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observance of holidays and other similar manifestations associated with the traditional religions.

---

[4]   The court, with agreement of the parties, again bifurcated the issues for trial.  Because the issue of whether anthroposophy is a religion is a threshold issue upon which the relevance of all other issues in the case depends, bifurcation served the interests of judicial economy and efficiency.

4

(Docket #318 at 2.)  The court's Order described that plaintiff intended to call one witness, Staley, in support of its case, and plaintiff specifically acknowledged that pursuant to the prior orders of this court, as well as the Ninth Circuit's decision, Staley could provide only percipient testimony.  (Id. at 10.)

Trial commenced on August 31, 2010.  Plaintiff called only Staley as a witness in support of its case-in-chief.[5]  Staley was one of the founders of the Rudolf Steiner College, in Fair Oaks, California, and is presently the Director of the Waldorf Teacher Education Program at the College; she has also been a member of the Anthroposophical Society in America ("ASA")[6] since 1963. (Reporter's Transcript ["R.T."], filed Sept. 7, 2010 [Docket #344], at 5:25-6:25, 8:10-19.)  In addition to Staley's testimony, plaintiff attempted to introduce various exhibits, including a number of books, into evidence.  However, despite initially proffering nearly 150 exhibits,[7] only one of

---

[5]    At times in plaintiff's opposition, it describes Staley as a "hostile witness."  However, no such finding was made at trial.  Fed. R. Evid. 611(c).  Indeed, plaintiff did not request such a ruling by the court.  (Docket #344.)

[6]    Plaintiff failed to elicit testimony from Staley fully describing the ASA.  While, as set forth below, the court does not consider the ASA's amicus brief as to the substantive issue at stake, it notes in order to provide proper context to its order, that the ASA describes itself as the "legal representative of anthroposophy in this country and is charged with a responsibility for the reputation of anthroposophy and its public face."  The Society was originally incorporated in 1933 in New York.  (Docket #334.)

[7]    In advance of trial, plaintiff withdrew many of these exhibits.  Additionally, the court granted defendant's motion in limine #14 directed at the vast majority of these exhibits. Without an expert witness, most of plaintiff's exhibits were not admissible.  Staley, as a percipient witness, was not qualified to lay a foundation for the exhibits or to authenticate them, and the exhibits, which plaintiff sought to offer for the truth of

plaintiff's exhibits was admitted at trial:  Plaintiff's Exhibit
153 (the Statutes of the ASA).  Also admitted by stipulation of
the parties were defendant's Exhibits B (the Articles of
Incorporation of the ASA), C (the Bylaws of the ASA, dated
September 23, 1995) and D (the Amended Bylaws of the ASA), which
plaintiff referred to during its direct examination of Staley.

Following the conclusion of Staley's testimony, plaintiff
rested, and defendant moved pursuant to Rule 52(c) for a judgment
in its favor on partial findings.[8]  The court issued its
tentative decision on the record, indicating its inclination to
grant the motion.

As the court observed at various points during the course of
trial, plaintiff failed to offer evidence addressing the critical
issues under <u>Alvarado</u>.  (R.T. at 53-56.)  Plaintiff did not offer
evidence specifically defining anthroposophy, its tenets, or the
nature of activities anthroposophists engage in that demonstrate
adherence to religious tenets.  Instead, plaintiff attempted to
elicit testimony from Staley opining about the writings and
teachings of Rudolf Steiner ("Steiner").[9]  Such opinion testimony

the matters asserted in them, were hearsay, for which no
exception applied.  (Docket #342.)

[8]    ASA filed an amicus brief in support of defendant.
(Docket #334.)  In its discretion, the court declines to consider
the brief; instead, it resolves this case solely upon its
assessment of the evidence proffered by plaintiff in its case-in-
chief.  <u>See</u> <u>Rocky Mountain Farmers Union v. Goldstene</u>, No. CV-F-
09-2234 LJO/DLB, 2010 WL 1949146, *2 (E.D. Cal. May 11, 2010)
(recognizing that the privilege of being a heard amicus rests
solely within the discretion of the court).

[9]    Of significance, plaintiff wholly failed to offer
evidence establishing Steiner's identity.  The court, however,
has gleaned from some of Staley's testimony and argument from
plaintiff's counsel that Steiner is viewed as the central figure

was ruled inadmissible, as Staley was never qualified as an expert.

Nonetheless, Staley did testify to being an "anthroposophist" and a member of the ASA, and in that capacity *could* have but did not provide certain percipient testimony relevant to the issues of the trial.  For example, plaintiff did not explore with Staley the parameters of her ASA membership, including (1) how she became a member, (2) what she did or observed as a member of the organization (*e.g.,* did she attend meetings, classes, or retreats or perform or observe any ceremonial functions?), and (3) what were the requirements to maintain membership in ASA?  Plaintiff, despite the court's suggestion, did not elicit such testimony from Staley.  (R.T. at 53-56.)  Plaintiff *could* have but did not inquire about Staley's own anthroposophical beliefs, including (1) how she learned about anthroposophy and from what sources, (2) when she first considered herself an anthroposophist, (3) how she applies anthroposophy in her daily life, (4) whether she believes anthroposphy espouses any dogma or belief system, and (5) how anthroposophy informs the conduct of her own life.  However, plaintiff did not elicit such testimony.  Finally, plaintiff *could* have but did not question Staley about the nature of her involvement in the "First Class of the School of Spiritual Science," including (1) the requirements, if any, for membership,

---

in the history of anthroposophy, and that he was apparently an European educator in the early 20th Century.  Steiner was also apparently the founder of the School of Spiritual Science in Switzerland which is connected in an undefined way by the evidence to anthroposophy.

(2) the School's connection, if any, to the ASA, (3) meetings, classes or retreats, if any, conducted at the School, (4) ceremonies, if any, performed at the School, and (5) teachings, if any, given by the School, including what she referred to as the "19 Cycles" and their relationship to anthroposophy.  Again, however, plaintiff chose to not elicit such testimony.

Because of this complete failure to present percipient testimony relevant to the essential issues in the case, the court's analysis could properly end here.  The above questions, and lack of answers thereto, demonstrate plaintiff's failure to satify its evidentiary burden at Phase I of the trial on the threshold issue of whether anthroposophy is a religion, requiring therefore, that judgment be entered in favor of defendant.

However, because of the lengthy history of this case and the important constitutional issue raised by plaintiff's claims, the court nonetheless examines below the evidence presented in the case under the Ninth Circuit's rubric established in Alvarado.

**STANDARD**

Federal Rule of Civil Procedure 52(c) governs judgment on partial findings by the court in a non-jury trial.  Fed. R. Civ. P. 52(c); Ritchie v. United States, 451 F.3d 1019, 1023 (9th Cir. 2006)(concluding that a Rule 52(c) motion can only be made during a bench trial).  After a party has been fully heard on an issue, "the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. 52(c).  A judgment on partial findings can be entered "at any time that the court can appropriately make a dispositive

finding of fact on the evidence." Fed. R. Civ. P. 52(c)
(advisory committee notes on 1991 amendment).  However, the court
may also decline to render any judgment until the close of the
evidence.  Fed. R. Civ. P. 52(c).

A Rule 52(c) judgment must be supported by findings of fact
and conclusions of law.  Fed. R. Civ. P. 52(c).  The Rule 52(c)
standard is different than the standards governing Rule 50 and
Rule 56.  Mother v. Hawaii, 283 Fed. Appx. 514, 515 (9th Cir.
2008); Ritchie, 451 F.3d at 1022.  The district court is not
required to view evidence in the light most favorable to the non-
moving party or draw any special inferences; rather, the court
may make findings in accordance with its own view of the
evidence.  Ritchie, 451 F.3d at 1023 (concluding that "[r]ule
52(c) expressly authorizes the district judge to resolve disputed
issues of fact.")(citing Fed. R. Civ. P. 52(a)).

**ANALYSIS**

Plaintiff's case hinges on a claim of violations of the
Establishment Clause of the First Amendment.  Government action
challenged as violating the Establishment Clause must satisfy the
test set forth in Lemon v. Kurtzman, 403 U.S. 602 (1971): To pass
muster under Lemon, the challenged practice must (1) reflect a
clearly secular legislative purpose; (2) have a primary effect
that neither advances nor inhibits religion; and (3) avoid
excessive government entanglement with religion.  Preliminarily,
to prevail on its Establishment Clause claim, plaintiff must
prove two key facts: (1) anthroposophy constitutes a "religion"
for Establishment Clause purposes; and (2) if anthroposophy is a
religion, that there is an anthroposophical curriculum at the

subject public Waldorf-method schools.  See Alvarado, 94 F.3d at

1227 (recognizing that the court had to "first consider whether

the object in question can be defined as 'religious' for

establishment [clause] purposes").  As set forth above, the

parties agreed that Phase I of the trial of this case would

address only the first of these threshold issues.[10]

The Ninth Circuit has recognized that "[a]ttempting to

define religion, in general and for the purposes of the

Establishment Clause, is a notoriously difficult, if not

impossible, task."  Alvarado, 94 F.3d at 1223 (citing Africa v.

Pennsylvania, 662 F.2d 1025, 1031 (3d Cir. 1981)("Few tasks that

confront a court require more circumspection than that of

determining whether a particular set of ideas constitutes a

religion within the meaning of the first amendment.")).  In

Alvarado, the Ninth Circuit considered whether the New Age

movement was a religion in order to determine if a challenged

statue was "religious" for Establishment Clause purposes.  94

F.3d at 1227.  Before ultimately answering in the negative, the

court considered whether the "New Age" Movement: (1) had current

religious adherents or significance; (2) addressed fundamental

and ultimate questions having to do with deep and imponderable

matters; (3) was comprehensive in nature, consisting of a belief-

system and not an isolated teaching; and (4) had certain formal

and external signs.  Alvarado, 94 F.3d at 1227-30 (finding that a

symbol must have current significance to be considered religious,

---

[10]   Clearly, if anthroposophy is not a religion, there
would be no need to consider whether anthroposophy is being
taught in the subject public schools such that the schools are
either advancing or inhibiting anthroposophical views.

and analyzing the New Age movement using the three "helpful indicia" proposed by Judge Adams' concurring opinion in <u>Malnak v. Yogi</u>, 592 F.2d 197, 198 (3d Cir. 1979)("<u>Malnak II</u>")).  The court also cited, as relevant to the determination, its prior decision in <u>Peloza v. Capistrano United Sch. Dist.</u>, 37 F.3d 517, 521 n. 5 (9th Cir. 1994) wherein the court considered the definition of religion as set forth in Webster's Dictionary in rejecting the plaintiff's claim that evolutionism or secular humanism is a religion; Webster's Dictionary defined religion as the "belief in and reverence for a supernatural power accepted as the creator and governor of the universe."  <u>Webster's II New Riverside University Dictionary 993</u> (1988).

The factors outlined in <u>Alvarado</u> are informative but not a definitive test to determine what constitutes a religion under the Establishment Clause.  <u>See Alvarado</u>, 94 F.3d at 1228-29 (citing <u>Malnak II</u>, 592 F.2d at 210 (Adams, J. concurring) (cautioning that the <u>Malnak II</u> indicia should *not* be regarded as a *final test* for determining if something is a religion); <u>see also</u> <u>Africa</u>, 662 F.2d at 1031 (explicitly adopting Judge Adams' approach in <u>Malnak II</u>, referring to the indicia as a *guideline*).

Additionally, the Ninth Circuit emphasized in <u>Alvarado</u> that religion for Establishment Clause purposes should be construed more narrowly than for First Amendment Free Exercise Clause purposes.  94 F.3d at 1230; <u>see also</u> <u>Peloza</u>, 37 F.3d at 521 n. 5 (recognizing that "[w]hile 'religion' should be broadly interpreted for Free Exercise Clause purposes, anything 'arguably non-religious' should not be considered religious in applying the establishment clause").

11

In rendering its decision in this case, this court recognizes that the factors considered in <u>Alvarado</u>, 94 F.3d at 1227-30, are not exhaustive; however, they provide the court some guidance in determining whether anthroposophy is a religion for Establishment Clause purposes. Therefore, the court will consider the evidence presented at trial using the aforementioned factors as specifically outlined in the court's Final Pretrial Conference Order.[11]

Preliminarily, however, the court makes several general remarks about the evidence. Plaintiff's apparent theory of the case was that anthroposophy, in its current manifestations, is synonymous with the beliefs of Steiner. In that regard, in large part, plaintiff attempted to elicit testimony from Staley regarding Steiner's beliefs. The court precluded such testimony as rank hearsay--Staley was not qualified as an expert and thus, could not opine as to the nature and meaning of Steiner's beliefs. For similar reasons, the court also precluded the admission of the majority of plaintiff's proffered exhibits which were various writings of Steiner; these writings again were hearsay, and plaintiff had no witness to authenticate nor lay a foundation or testify to the contents of the writings. In fact, in virtually every instance, Staley had never read the books plaintiff sought to introduce. Moreover, even if Staley could have given such testimony regarding Steiner's beliefs, plaintiff did not lay any foundation for the proposition that Steiner's

---

[11]   Considering the limited nature of the evidence presented by plaintiff, there appears no basis to go beyond these factors in deciding the issue.

personal beliefs, apparently expressed long ago, were representative of anthroposophy today.[12]

Indeed, from the limited evidence presented at trial very little can be gleaned about anthroposophy as an ideology. The testimony of Staley demonstrated that anthroposophy is somehow related to an organization in this country, the ASA, which has certain membership requirements, holds meetings, and has an identified purpose to support Steiner's work and thought. Significantly, the ASA admits anyone, without regard to religious affiliation, and the Society expressly rejects any sectarian activity and provides that no dogmatic stand whatsoever may be taken by the organization.

Staley testified consistently with the ASA's internal documents which were admitted into evidence. She testified that in her view, anthroposophy was not a religion (R.T. at 44:2) but rather a method of learning which encourages personal inquiry and research (R.T. at 13:24-14:4, 24:3-6, 38:3-8, 49:15-23). She testified that as an anthroposophist, she is not required to adhere to any tenets, and that anthroposophy has no specific dogma or belief system. Rather, anthroposophical writings are meditative tools and are meant to encourage personal thought and self-reflection. (R.T. at 18:24-25, 21:20-23.) Staley also testified that there are no formal or external signs of anthroposophy which are akin to religious symbols or

---

[12]   Staley's testimony and Steiner's various writings were also properly excluded on the basis of relevance. Plaintiff failed to establish the relevance of Steiner's personal beliefs to the inquiries under Alvarado, and also did not establish that Staley followed Steiner's views in any respect whatsoever.

manifestations.  (R.T. at 40:5-10, 42:17-21, 44:2-16.)  She
further testified that there are no special observances, holidays
or ceremonial functions associated with anthroposophy.  (R.T. at
42:17-21.)

Considering the evidence as whole, plaintiff simply failed
to offer any evidence to support a finding that anthroposophy is
a religion.  At best, the evidence suggests that anthroposophy is
a method of learning which is available to anyone regardless of
their religious or philosophical persuasion.  Stated another way,
anthroposophy is more akin to a methodology or approach to
learning as opposed to a religious doctrine or organized set of
beliefs.  Having reached this conclusion, the court will
nevertheless briefly discuss the application of the <u>Alvarado</u>
factors.

    **1.   System of Belief and Worship**

Contrary to plaintiff's argument, neither Staley's testimony
nor the four admitted exhibits establish that anthroposophy is a
system of belief and worship of a "superhuman controlling power"
involving a code of ethics and philosophy requiring obedience
thereto.  First, while plaintiff cites extensively to the four
admitted exhibits, particularly ASA's Articles of Incorporation
which defines anthroposophy as "human wisdom based on the study
of knowledge of man's physical, soul and spiritual nature," none
of these exhibits establish that anthroposophy involves a belief
system as such, much less worship of a "controlling superhuman
power" or adherence to particular theological or philosophical
tenets.  Instead, for example, the <u>Principles</u> referenced in the

Bylaws of ASA state: "anyone can become a member [of ASA],[13] without regard to nationality, social standing, *religion*, or scientific or artistic conviction . . . The [ASA] rejects any kind of sectarian activity." (Ex. 153 at 000002.) (emphasis added.)   The <u>Principles</u> also provide that a "dogmatic stand in any field whatsoever is to be excluded from the [ASA]."   (<u>Id.</u>) Thus, contrary to plaintiff's protestations, the internal documents of ASA do not support a finding that anthroposophy is a system of belief involving a "superhuman controlling power" or code of ethics.   Membership in the ASA is open to any person, without regard to their religious affiliation, and the Society expressly rejects any kind of sectarian activity and provides that *no dogmatic stand may be taken.*

Moreover, plaintiff's citation to various aspects of Staley's testimony discussing spirituality is also unavailing. Plaintiff relies heavily on Staley's testimony defining anthroposophy as a "path from the human being to the realm of the spirit."   Staley described the realm of the "spirit" as "the whole realm of the unseen . . . we have things we can weigh and measure and see and we have things we can't see and measure . . . all that is not physical." (RT at 27:2-5, 13-23.) Staley's reference to the "spiritual" or non-physical world does not

---

[13]     In certain respects, the Bylaws of the ASA indicate that members must "subscrib[e]" or "support" the "<u>Principles</u>" "given by Rudolf Steiner at the founding of the . . . Society in 1923." (Ex. C at 0042; Ex. D at 0049.) The court acknowledges that language *could* denote a requirement of adherence to a certain set of beliefs. However, no such evidence was introduced at trial to establish that proposition. Indeed, there is no evidence in the record that ASA members are required to believe anything.

establish that anthroposophy, itself, is a system of belief.

Plaintiff also cites certain portions of Staley's testimony discussing her understanding of "Christ's relevance" to the personal beliefs of Steiner, and her understanding of Steiner's views on reincarnation. (R.T. at 22:24-23:4, 23:15-23.)  Staley's testimony on these issues is inapposite.  Importantly, as stated above, plaintiff failed to establish the relevance of Steiner's views to this court's determination of whether anthroposophy is a religion; plaintiff did not introduce any evidence to establish that anthroposophy mandates adherence to Steiner's beliefs. Indeed, the evidence suggests that anthroposophy does not require adherence to any specific beliefs, of Steiner or anyone else. Moreover, even if Steiner's views were relevant, plaintiff failed to establish that Staley's personal views and understanding of Steiner's beliefs represented the views of anthroposophists, generally.  Moreover, Staley could not give expert opinion testimony on the issue.  Significantly, Staley never testified that Christ or Steiner's views were considered, by her or any other anthroposophist, as any controlling power to be worshiped or followed.

##     2.   Fundamental and Ultimate Questions

For reasons similar to the above, plaintiff also failed to establish that anthroposophy addresses fundamental and ultimate questions having to do with deep and imponderable matters.  In Africa, the Third Circuit elaborated on this factor, explaining as follows:

> Traditional religions consider and attempt to come to
> terms with what could best be described as "ultimate"
> questions-questions having to do with, among other

things, life and death, right and wrong, and good
and evil.  Not every tenet of an established theology
need focus upon such elemental matters, of course; still,
it is difficult to conceive of a religion that does not
address these larger concerns.  For, above all else,
religions are characterized by their adherence to and
promotion of certain "underlying theories of man's
nature or his place in the Universe."

662 F.2d at 1033.  Here, while plaintiff introduced some evidence

through Staley describing how anthroposophy seeks to understand

non-physical reality, that testimony did not establish that

anthroposophy provides answers to "ultimate questions" about life

and death or right and wrong or good and evil, as described in

Africa.

Instead, the evidence at trial suggested that anthroposophy

encourages personal inquiry but does not provide answers to

ultimate questions.  Plaintiff broadly asserts that the Statutes

of ASA "lay claim" to a "a true knowledge of the spiritual

world;" however, plaintiff misquotes the document.  The Statutes

provide:  the ASA "is to be an association of people whose will

it is to nurture the life of the soul, both in the individual and

in human society, on the basis of a true knowledge of the

spiritual world."  (Ex. 153 at ¶ 1.)  The source of the "true

knowledge" is not identified but arguably people will discern the

true knowledge for themselves.  Indeed, plaintiff fails to

acknowledge that the Statutes further provide that

"[a]nthroposophy . . . leads to results that can serve as a

*stimulus* to spiritual life for every human being, *whatever his .*

*. . religion*."  (Id. at ¶ 3.)  Accordingly, from the evidence

introduced at trial, it appears that any person can be an

anthroposophist, regardless of his religious beliefs, and can

17

explore his own ultimate questions and seek his own answers.

### 3.   Comprehensiveness

Plaintiff also failed to prove that anthroposophy constitutes a comprehensive belief-system.  Plaintiff's citation to portions of Staley's testimony and the four admitted exhibits that discuss "spiritual" matters and the ASA's self-described purpose to carry out its goals according to Steiner's teachings do not establish that anthroposophy is a comprehensive belief-system.  Indeed, as defendant emphasizes, Staley's testimony, in particular, suggests precisely the contrary because a comprehensive belief-system is not one where "anyone can disagree with anybody."  (R.T. at 38: 3-8)); see Alvarado, 94 F.3d at 1229 (citing Africa, 662 F.2d at 1031)("a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching.").

Plaintiff quotes a number of sections from the ASA's Statutes, pertaining to spirituality and spiritual-scientific training; however, the reference to "spirituality" in the Statutes hardly demonstrates that anthroposophy is a comprehensive belief-system.  While anthroposophy may involve a discussion of spirituality, critically *absent is any requirement of adherence* to any dogma regarding spirituality.

Plaintiff also focuses on the ASA's self-described purpose to carry out "its goals according to the teachings of Dr. Rudolf Steiner." (Exhibit B at 0031.)  Plaintiff maintains, in its opposition without citation to evidence, that Steiner espoused "religious" beliefs.  In fact, there is no evidence in the record that suggests Steiner espoused any religious dogma, nor that an

18

anthroposophist must surrender his religious beliefs to Steiner. Indeed, much of the evidence which purports to describe anthroposophy is more akin to the "New Age" movement discussed in Alvarado, 94 F.3d at 1230, which imposed "no moral or behavioral obligations; no comprehensive creed; no particular text, rituals or guidelines . . . no requirement or suggestion that anyone give up the religious beliefs he or she already holds."

### 4.   Formal and External Religious Signs

Plaintiff likewise did not establish that anthroposophy has formal and external signs, of any kind.  Specifically, plaintiff did not offer any evidence that anthroposophy has formal services, ceremonial functions, clergy, observed holidays, or any other formal and external signs associated with traditional religions.  Alvarado, 94 F.3d at 1229 (citing Africa, 662 F.2d at 1035-36)(recognizing that "a religion can often be recognized by the presence of certain formal and external signs" including "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observance of holidays and other similar manifestations associated with the traditional religions").

Plaintiff's reliance on the organization and structure of the ASA and Staley's testimony regarding the "First Class" of the School of Spiritual Science to assert that anthroposophy has formal and external signs of religion is unavailing.[14]  First,

---

[14]   Plaintiff's opposition quotes numerous portions of the four admitted exhibits and Staley's testimony in an attempt to show that anthroposophy has formal and external signs of religion. (Pl.'s Opp'n, filed Oct. 5, 2010, at 17-26)(quoting portions of the Statutes of ASA, the ASA Bylaws and Articles of Incorporation, and Staley's testimony).  However, plaintiff does

19

the Statutes of the ASA expressly state that the Society "rejects any kind of sectarian activity" and that anyone can become a member of the organization, without regard to religion. (Exhibit 153 at 3).  Moreover, Staley testified that the formal and external signs of traditional religions, such as ceremonial functions and observance of holidays, are not part of anthroposophy.  (See R.T. at 40:5-10; 42: 17-21; 44:2-16.)  She testified that there are no specific festivals or celebrations associated with anthroposophy.  (R.T. at 42:17-21.)  Instead, anthroposophists celebrate a variety of ceremonies and observe certain holidays *based on their own personal religious practices*, including for example, Easter and Christmas for those anthroposophists who are Christian, Ramadan for those anthroposophists who are Muslim or Yom Kippur for those anthroposophists who are Jewish.  (R.T. at 43:1-25-44:19.)

Furthermore, plaintiff's blanket assertion that the "First Class" is a sacred religious ritual is not supported by the evidence.  Staley's testimony regarding the "First Class" establishes, at most, that: (1) Christ was mentioned during classes; (2) there are no specific writings associated with the First Class; (3) Staley is a member of the Class; and (4) Staley was not aware of any specific training which was required to become a member of the First Class.  (RT at 15:16-18, 15:24-25, 16:14-18, 17: 21-25, 36:18-22, 36: 23-37, 17: 16-20)).  Staley did not testify that the First Class was a ritual at all, let

not explain how these selections prove its case.  (See id.) Plaintiff simply asserts that "a close look at the evidence shows that Anthroposophy is very organized with rigid standards." (Opp'n at 17.)

alone a *religious* ritual.

At best, the evidence proffered by plaintiff on this factor suggests that anthroposohpy is connected to an organizational structure, through the ASA, which has certain membership requirements, meetings, and an identified purpose.[15]  However, plaintiff simply did not establish how that national organization and its structure are indicative of a religion.  Were the court to find an external sign of religion based simply on evidence that there is an organizational structure associated with anthroposophy, it would be extending the definition of religion to an unworkable extreme.  Cf. Alvarado, 94 F.3d at 1230 (noting that the First Amendment must be held to protect the "unfamiliar and idiosyncratic as well as commonly recognized religions," but it loses its sense, and ability to protect, when carried to extremes).

Because plaintiff has not shown a connection between the structural characteristics of anthroposophy and traditional religions or presented evidence that anthroposophy has formal and external signs associated with traditional religions, the court finds that this factor also does not support a finding that anthroposophy is a religion.[16]

_____

[15]  However, the standards and organizational structure are not as rigid as plaintiff suggests.  (See Opp'n at 17).  For example, the ASA, which is part of a larger international organization, provides for the creation of local member groups and allows those groups the flexibility to determine their own eligibility requirements and statutes, so long as they do not conflict with the ASA's Statutes.  (Exhibit 153 at 000004.)

[16]  Plaintiff's contention that the court should make "an adverse inference" against defendant based on defendant's alleged "destruction of evidence" is wholly without merit.  Plaintiff proffers no evidence whatsoever that defendant destroyed any

**CONCLUSION**

Based upon the trial conducted in this action on August 31, 2010, the parties' post-trial briefing on defendant's Rule 52(c) motion, and the above-stated findings of fact and conclusions of law, IT IS HEREBY ORDERED that defendant's motion for judgment on partial findings under Rule 52(c) is GRANTED.

IT IS ORDERED and ADJUDGED that plaintiff take nothing and that the action be dismissed on the merits.  Judgment shall be entered in favor of defendant.


DATED: November 4, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

evidence relevant to this case.  While Exhibit C references an attachment (the Bylaws registered on March 3, 1925) which was not submitted with the exhibit, defendant maintains that it never had a copy of the attachment, and plaintiff offers no evidence to establish otherwise.  Moreover, plaintiff has waived any objection to Exhibit C as it failed to make this argument during trial and instead stipulated to the admission of Exhibit C.